IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandira Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-CR-204 |
| KENNETH R. WOODARD, | |
| Defendant. | |

STATEMENT OF FACTS

The United States and the defendant, KENNETH R. WOODARD (hereinafter, "defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.      On or around April 29, 2025, in the Eastern District of Virginia, the defendant called via cell phone, an instrumentality of interstate commerce, the Department of Veteran Affairs' (VA) crisis line and demanded to be connected to the VA hospital in Washington, D.C. and, specifically, a VA police officer that he interacted with earlier in the day. During the call, the defendant stated he was going to kill the VA police officer (designated V-3 "Victim-3" in the Information). The defendant stated "I'm gonna come down there in my truck, with a gun, and I'm gonna kill the motherfucking cop," "I'm coming down there. I'm already on my way... I'm coming with a 50 caliber, with an 8-inch barrel... trust me that will go through his bulletproof vest. I will kill that motherfucker," and "I am going to come down there and fucking shoot him."

2.      On or around May 13, 2025, at approximately 12:23 p.m., the defendant called the United State Postal Service (USPS) Customer Care Center and spoke with USPS Employee 1, located in California, regarding a package he was waiting to receive. During the phone call, the

1

defendant stated the next time he saw a mailman, he was going to "fucking kill him." He continued, saying that, if the package was not delivered the same day, he was "coming to the post office with a God damn gun."

3. On or around May 13, 2025, at approximately 1:22 p.m., the defendant called the USPS Customer Care Center and spoke with USPS Employee 2, located in Michigan, regarding the same package. The defendant demanded that USPS Employee 2 get him his package and asked if USPS Employee 2 wanted him to "come down there with a gun." The defendant further warned, "You don't want me to come down there. Trust me." Later in the call, the defendant stated that he is a United States Marine that owns guns. At the end of the phone call, the defendant stated, "I'm coming down there with a gun."

4. On or around May 13, 2025, at approximately 1:46 p.m., the defendant called the USPS Customer Care Center via cellular phone and spoke with USPS Employee 3 (designated V-2 ("Victim-2") in the Information), located in Michigan, regarding the package. During the phone call, the defendant began trying to intimidate USPS Employee 3 by threatening him. He said that he was a U.S. Marine sniper and that, if he has to go to the post office, he will go with a gun. The defendant told USPS Employee 3, "I'm gonna fucking kill you." At the end of the phone call, the defendant stated to USPS Employee 3, "You are a dead mother fucker" and "You're a dead bitch."

5. USPS Employee 3 (V-2) is an employee of the United States, and an official whose killing would be a crime under § 1114 as referenced in 18 U.S.C. 115(a)(1), who was engaged in the performance of his official duties at the time of these threats.

6. On or around May 13, 2025, during a phone call with Postal Inspectors from the United States Postal Inspector Service, the defendant stated he would sit outside a local post office and put a bullet in someone's head if he did not receive his package. On the same call, the defendant

described possessing three firearms and told the Postal Inspectors if they come to his house, they better come with firepower.

7. On or around May 28, 2025, during a phone call with the VA crisis line, the defendant told a VA Crisis Specialist that he was going to find and rape the Crisis Specialist's husband and children.

8. The defendant was within the Eastern District of Virginia when he made each of the phone calls described herein.

9. The defendant intended the communications described herein as true threats.

10. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

11. The actions of the defendant, as recounted above and in the Criminal Information, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date:                                By: _____
                                     Jacob A. Mercer
                                     Special Assistant United States Attorney
                                     April N. Russo
                                     Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, KENNETH R. WOODARD, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
KENNETH R. WOODARD

I am Shannon Quill, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Shannon Quill, Esq.
Attorney for KENNETH R. WOODARD